

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>HAYLEY MARIE ROBINSON,<br>　　　　　　　Debtor. | BAP No. WW-21-1042-TLB<br><br>Bk. No. 19-bk-11724-MLB |
| HAYLEY MARIE ROBINSON,<br>　　　　　　　Appellant,<br>v.<br>OSCAR LEE OLIVE, IV,<br>　　　　　　　Appellee. | Adv. No. 19-ap-01105-MLB<br><br>**MEMORANDUM***  |

Appeal from the United States Bankruptcy Court
for the Western District of Washington
Marc L. Barreca, Chief Bankruptcy Judge, Presiding

Before: TAYLOR, LAFFERTY, and BRAND, Bankruptcy Judges.

## INTRODUCTION

Model Hayley Robinson[1] posted a Facebook video wherein she

accused appellee Oscar Lee Olive, IV,[2] a photographer, of sexually

---

* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] The principal actors involved in the incidents giving rise to this appeal use professional aliases that are sometimes referred to in the trial transcripts and elsewhere. Ms. Robinson uses the alias "Ireland Rose."

assaulting another model. Mr. Olive sued her in federal court for defamation and intentional infliction of emotional distress. Ms. Robinson then filed a chapter 7[3] bankruptcy case, and Mr. Olive responded with an adversary proceeding seeking to have his claims adjudicated and the resulting judgment declared nondischargeable.

After a trial, the bankruptcy court found that Mr. Olive had established the elements of a defamation claim under Washington law and the elements for excepting the resulting debt from discharge under § 523(a)(6). The bankruptcy court's key findings were based on its credibility determinations and are adequately supported by the record.

Accordingly, we AFFIRM.

## FACTS[4]

Mr. Olive owned Shutter Fun, a business primarily involving erotic photography. He made substantial income from his photography business, and his photos had been published by entities such as Penthouse. In addition to running his photography business, Mr. Olive was a United States Marine.

---

[2] Mr. Olive goes by his middle name, Lee, and he also uses the alias "Lee Richardson."

[3] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

[4] Most of the relevant background facts are undisputed and are taken from the bankruptcy court's oral ruling.

In June 2016, Ms. Robinson and her boyfriend at the time, Justus Keppel, flew to Washington, D.C., at Mr. Olive's invitation, so that Ms. Robinson could participate in photo shoots. From June 28, 2016, through July 11, 2016, Ms. Robinson, Mr. Keppel, and another model, Kiersten Alexandra Klag,[5] stayed at Mr. Olive's house in Maryland.

During this period, Mr. Olive and Ms. Robinson had disagreements, including disputes arising from Ms. Robinson's failure to attend modeling sessions arranged by Mr. Olive, her refusal to sign a "house rules" contract, and a disagreement about the rate Mr. Olive charged other photographers for Ms. Robinson's modeling services.[6]

On July 3, 2016, an incident occurred in an upstairs bedroom of Mr. Olive's house. Present were Ms. Robinson, Mr. Keppel, Mr. Olive, and Ms. Klag. There was an interaction between Ms. Klag and Mr. Olive that was witnessed by Ms. Robinson (the "July 3 Incident").

Following the July 3 Incident, Ms. Robinson resided at Mr. Olive's house until July 11, 2016, when Ms. Robinson advised that she would no longer work with Shutter Fun. Later that night, Ms. Robinson told Mr. Olive that she, Mr. Keppel, and some other models would be leaving Mr. Olive's home to stay elsewhere. Mr. Olive became upset, and, at some

---

[5] Ms. Klag uses the alias "Lacey Kyle."

[6] Mr. Olive arranged photo shoots with other photographers and would quote a rate that the photographer would pay directly to the model.

point, Ms. Robinson called the police, who facilitated her exit from Mr. Olive's home.

That same evening, Ms. Robinson posted on Facebook a video in which she stated that Mr. Olive sexually assaulted Ms. Klag during the July 3 Incident. As a result, Mr. Olive allegedly lost income from his photography business. Further, many models saw the video, and numerous models posted comments on Facebook in reaction to the video indicating that they would no longer work with Mr. Olive.

The next day, July 12, 2016, Mr. Keppel, Ms. Robinson, and others accompanied Ms. Klag to a local police station to assist Ms. Klag in reporting the July 3 Incident as a sexual assault. Eventually, a Naval Criminal Investigation Service ("NCIS") investigation was initiated which culminated in an administrative separation hearing. Mr. Olive was initially discharged from the military under other than honorable conditions, but he later applied to have his discharge reviewed, which resulted in his discharge status being upgraded to "General Under Honorable Conditions."

On July 13, 2016, Ms. Robinson uploaded another video to Facebook, this time to Mr. Keppel's Facebook account, discussing the July 3 Incident. In that video, she gloated that NCIS went to Mr. Olive's house and that he was "done" as a photographer.

Several months later, on November 1, 2016, Mr. Olive received a text message from Ms. Robinson in which she apologized for accusing him of

4

sexual assault and for previously believing Ms. Klag's assertion that a sexual assault occurred. The next day, Ms. Robinson posted on Facebook a statement referencing her earlier video posts and explaining that the sexual assault allegation was false. Ms. Robinson also had a telephone conversation with Mr. Olive, during which she apologized and stated that she wished she had all the information "before jumping on the huge witch hunt."

In 2018, Mr. Olive sued Ms. Robinson in the United States District Court for the Western District of Washington seeking $2 million in damages based on Ms. Robinson's false allegations. The district court litigation was pending when Ms. Robinson filed her chapter 7 bankruptcy petition in May 2019. Mr. Olive timely filed an adversary proceeding seeking to have Debtor's debt to him declared nondischargeable under § 523(a)(6) based on his state law claims for defamation and intentional infliction of emotional distress.

The bankruptcy court held a two-day trial, at which it heard the testimony of Mr. Olive, Ms. Robinson, Eric Franklin, a photographer who had previously served in the Marines, and Caitriona Hogan, a model and video producer. Ms. Klag did not testify.

After trial, the bankruptcy court orally ruled that Mr. Olive had established the elements of a defamation claim under Washington law and for a declaration of nondischargeability of the resulting damages under

§ 523(a)(6).[7] The bankruptcy court also granted relief from stay for the parties to return to the district court for a determination of damages.[8] Ms. Robinson timely appealed.

Immediately before oral argument in the appeal, the District Court issued a judgment that assessed general damages against Ms. Robinson in the amount of $15,000. Mr. Olive sought actual damages of $63,203 based on an alleged loss of income. Ms. Robinson did not oppose this request, but the District Court, nonetheless, found that Mr. Olive's evidence failed to establish damages as he requested. Instead, it awarded damages of $15,000

---

[7] The bankruptcy court found that Mr. Olive had failed to establish his claim for intentional infliction of emotional distress. Mr. Olive did not cross-appeal that ruling.

[8] The bankruptcy court's order includes the language, "this is a final order on the issues of nondischargeability of Plaintiff's claims herein." Although the order does not contain an express finding that "there is no just reason for delay" as required by Civil Rule 54(b), applicable via Rule 7054, it is clear from the bankruptcy court's comments during the oral ruling that it intended the order to be final for purposes of appeal. *See* Hr'g Tr. (Jan. 7, 2021) at 22:4-9 ("[I]f you're going upstairs [to district court] . . . for the damages portion, then the judgment I would be entering now would be a final judgment for purposes . . . of any appeal by Mr. Hathaway's client [Ms. Richardson]." We, thus, determine that this judgment is final for purposes of this appeal.

We also note that the District Court finally decided the damages issue on July 9th, 2021. Its determination is now final.

We finally acknowledge that the law regarding whether defamation is a "personal injury tort" that "shall be tried in the district court" pursuant to 28 U.S.C. § 157(b)(5) is unclear. But the Supreme Court determined in *Stern v. Marshall*, 564 U.S. 462, 479-80 (2011), that this statute is not jurisdictional. And Rule 7012-1(c) of the Local Rules of the Bankruptcy Court for the Western District of Washington provides that silence, in the face of a requirement that the parties file a document regarding consent to adjudication by the bankruptcy court, constitutes deemed consent. Here, the bankruptcy court had jurisdiction to liquidate the defamation claim and to determine if it was nondischargeable.

because Ms. Robinson's initial Facebook post constituted defamation per se. "The imputation of a criminal offense involving moral turpitude [is] clearly libelous per se." *Caruso v. Local Union No. 690 of Int'l Brotherhood of Teamsters*, 670 P.2d 240, 245 (Wash. 1983) (citation omitted). The District Court concluded that defamation per se is actionable without proof of special damages as damage can be presumed. It awarded $15,000 based on the presumed negative impact on Mr. Olive's business, the mental anguish associated with a false accusation of criminal conduct, and the ameliorative fact that Ms. Robinson only posted the accusation once and later published a retraction. This determination is now final.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Did the bankruptcy court err in finding Ms. Robinson liable for defamation?

Did the bankruptcy court err in finding the resulting debt nondischargeable under § 523(a)(6)?

## STANDARDS OF REVIEW

We review the bankruptcy court's conclusions of law de novo and its factual findings for clear error. *Carillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002).

7

"Whether a claim is nondischargeable presents mixed issues of law and fact and is reviewed de novo." *Id.* (citing *Murray v. Bammer (In re Bammer)*, 131 F.3d 788, 791–92 (9th Cir. 1997) (en banc)). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). If two views of the evidence are possible, the trial court's choice between them cannot be clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985). We give particular deference to findings of fact based upon credibility. *Id.* at 575. This is because a reviewing court must give due regard to the opportunity of the trial court to judge the credibility of witnesses. *See Arab Monetary Fund v. Hashim (In re Hashim)*, 379 B.R. 912, 924–25 (9th Cir. BAP 2007) (citing Civil Rule 52(a), incorporated by Rule 7052; Rule 8013). Deference is also given to the inferences drawn by the trial court. *Id.* at 925.

## DISCUSSION

**A.    Appellee's request for judicial notice is denied.**

Mr. Olive requests the Panel take judicial notice of: (1) the first amended complaint filed in the district court; (2) a page from Marine Corps Order 1900.16 showing that a military or civil conviction is not required for discharge; and (3) the district court's order setting deadlines regarding a

motion for damages. Ms. Robinson opposes this request. Mr. Olive contends that these documents are relevant to the issues on appeal. We disagree. Moreover, the documents were not presented at trial nor were they otherwise before the bankruptcy court when it was making its decision. Accordingly, the request is DENIED.

**B.** **The bankruptcy court did not err in finding Ms. Robinson liable for defamation.**

To establish defamation under Washington law, the plaintiff must prove the following elements by a preponderance of the evidence: (1) a false statement, (2) publication, (3) fault, and (4) damages. *Duc Tan v. Le*, 300 P.3d 356, 363 (Wash. 2013) (en banc). The court's finding that the publication element was met--by the statement being posted on Facebook where it was seen by many individuals—is not in dispute.

In assessing the falsity of a statement, courts examine whether the statement at issue is one of fact rather than opinion, as the latter is protected by the First Amendment. *Camer v. Seattle Post-Intelligencer*, 723 P.2d 1195, 1201 (Wash. App. 1986). In determining whether a statement is non-actionable opinion, Washington courts consider the totality of the circumstances, specifically: "(1) the medium and context in which the statement was published, (2) the audience to whom it was published, and (3) whether the statement implies undisclosed facts." *Dunlap v. Wayne*, 716 P.2d 842, 848 (Wash. 1986) (en banc).

9

The bankruptcy court found that these factors weighed against finding Ms. Robinson's initial Facebook post to be non-actionable opinion. First, Ms. Robinson testified that she posted the video on Facebook to spread awareness about the sexual assault to protect other models, and in fact many of her Facebook followers despised Mr. Olive as a result of the allegation. The court also found that viewers of the video would not likely assume that a statement accusing someone of sexual assault was an expression of opinion rather than a statement of fact.

The second factor, the audience to which the statement was published, requires the court to determine "whether the audience expected the speaker to use exaggeration, rhetoric, or hyperbole." *Id.* The bankruptcy court found that there was no evidence the intended audience of other models would have any reason to expect Ms. Robinson to exaggerate or mischaracterize the sexual assault.

The third factor, whether the statement implies undisclosed facts, is the most crucial. *Id.* The bankruptcy court found this element weighed against finding the statement to be non-actionable opinion because the video included no underlying facts forming the basis for the allegation.

Based on the foregoing, the bankruptcy court determined that Mr. Olive had established that Ms. Robinson made a false statement.

With respect to fault, a private individual need only show that the defendant negligently published defamatory matter. *Eubanks v. N. Cascades Broad.*, 61 P.3d 368, 372 (Wash. App. 2003). The court found that this

10

standard was met (indeed, exceeded) because Ms. Robinson intentionally made and posted the video, in her words, "to spread awareness to the modeling industry." Trial Tr. (Nov. 30, 2020) at 66:17-23.

As for damages, although the bankruptcy court did not quantify them, based on the evidence it found that Mr. Olive's photography business was harmed as a result of the false allegation in the Facebook video.[9]

On appeal, Ms. Robinson does not address publication, fault, or damages. She focuses her argument on the false statement element, arguing that: (1) she had reasonable grounds for belief in the truth of the content of her statements regarding sexual assault; or (2) her statements regarding the sexual assault were nonactionable opinion. And at oral argument, she doubled down — asserting that a sexual assault occurred.

As for the first contention, she lists several items of evidence from trial, including her own testimony that she did not believe the sexual interaction between Mr. Olive and Mr. Klag was consensual.[10] But the

---

[9] The bankruptcy court found that Mr. Olive had not presented any evidence supporting a finding that his discharge from the military was caused by statements made by Ms. Robinson in the Facebook post.

[10] Other evidence cited included evidence that she and Ms. Klag reported the July 3 Incident to Ms. Kim; that after the July 3 Incident Ms. Robinson was presented with house rules contracts; Ms. Klag reported the incident to the local police; the police referred the allegation to NCIS; Mr. Olive was accused of attempting to persuade a potential witness to change her statement to NCIS; a Marine Corps Discharge Board found that Mr. Olive committed orders violations and sexual assault; and Mr. Olive's original and revised DD-214s stated that he committed sexual assault. She also points

bankruptcy court did not believe Ms. Robinson's testimony on this point, finding that she "knew from the beginning that the sexual assault allegation was false." Hr'g Tr. (Jan. 7, 2021) at 8:3-5. As noted, we afford considerable deference to a bankruptcy court's findings and inferences that are based on credibility determinations. And Mr. Olive testified to the contrary; the trial court's choice between two plausible views of the evidence cannot be clearly erroneous. *Anderson*, 470 U.S. at 574.

As for her contention that her statement was nonactionable opinion, she does not refute any of the bankruptcy court's findings supporting its contrary conclusion. She erroneously relies on an unpublished decision, *Pardee v. Evergreen Shores Beach Club*, No. 53126-7-II, 2020 WL 3440572, at *7 (Wash. App. Jun. 23, 2020), for the proposition that "audiences of statements posted on a social media page expect the speaker to use exaggeration, rhetoric, or hyperbole." In fact, the court in *Pardee* was referring to a specific social media page, not to social media postings in general.

In short, while there may have been some evidence (i.e., Ms. Robinson's testimony) to support a finding that Ms. Robinson did not know the allegation was false when she made it, the bankruptcy court found otherwise based on its credibility determination. Accordingly, we

out that there was no evidence that Ms. Klag ever recanted, and she opines that Mr. Olive was evasive and provided contradictory testimony at trial.

find no clear error or mistake of law in its conclusion that Ms. Robinson was liable for defamation under Washington law.

**C.    The bankruptcy court did not err in finding the resulting debt nondischargeable under § 523(a)(6).**

Section 523(a)(6) excepts from discharge debts resulting from "willful and malicious injury by the debtor to another entity or to the property of another entity." *Ormsby v. First Am. Title Co. of Nev. (In re Ormsby)*, 591 F.3d 1199, 1206 (9th Cir. 2010) (quoting § 523(a)(6)). A plaintiff seeking to except a debt from discharge under this section must prove that the actor intended the consequences of the act, not simply the act itself. *Id.* Both willfulness and maliciousness must be proven to block discharge under § 523(a)(6). *Id.*

The "willful injury requirement is met only when the debtor has a subjective motive to inflict injury or when the debtor believes that injury is substantially certain to result from his own conduct." *Id.* (quoting *In re Su*, 290 F.3d at 1142). The debtor is charged with the knowledge of the natural consequences of his actions. *Id.*

"A malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *Id.* at 1207 (quoting *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1209 (9th Cir. 2001)). Malice may be inferred based on the nature of the wrongful act. *Id.*

The bankruptcy court found that all the requisite elements had been met. It found that the evidence supported a finding that Ms. Robinson

13

acted willfully, i.e., with a subjective motive to inflict injury, when she posted the first Facebook video, as demonstrated by her "glee" in the second Facebook video in having caused Mr. Olive harm. The court also found the evidence supported an inference that Ms. Robinson made the false allegation as a result of the disputes that had arisen between her and Mr. Olive during her stay at his home.

As for maliciousness, the bankruptcy court found that Ms. Robinson's posting of the first Facebook video knowing that the sexual assault allegation was false constituted a wrongful act and that intent to injure was demonstrated by: (1) her admission that she posted the video to inform other models; and (2) her gloating in the second Facebook video that Mr. Olive's business was ruined. The bankruptcy court also found that the conduct necessarily caused injury to Mr. Olive's business and that such injury was readily foreseeable as a result of the false allegation, and that Ms. Robinson had not established just cause or excuse for her conduct. The evidence supports these findings.

On appeal, Ms. Robinson's entire argument regarding the nondischargeability claim is the conclusory statement, "Appellant's statements were not willful or malicious. They were not reckless or negligent. They were not provably false. The Appellant had reasonable grounds for belief in the truth of the content of her statements regarding sexual assault or that her statements regarding sexual assault were nonactionable opinion." But, as stated above, the bankruptcy court did not

believe Ms. Robinson's testimony that she thought the allegation was true at the time she posted the first Facebook video. Ms. Robinson has failed to show that the bankruptcy court erred in concluding that all of the elements of a § 523(a)(6) claim were met.

## CONCLUSION

For these reasons, the bankruptcy court did not err in finding Ms. Robinson liable for defamation under Washington law or in finding the resulting debt nondischargeable.

We therefore AFFIRM.